1
2
3
4
5
6
7
8
9          UNITED STATES DISTRICT COURT

10          EASTERN DISTRICT OF CALIFORNIA

11

12   KIMBERLY MCKINNEY,                    No.  1:23-cv-01304-KES-HBK

13                  Plaintiff,

14          v.                              ORDER GRANTING IN PART, AND
                                            DENYING IN PART, MOTION FOR
15   LAND O'LAKES, INC.,                    SUMMARY JUDGMENT

16                  Defendant.              (Doc. 22)

17

18

19

20          Plaintiff Kimberly McKinney brings claims against defendant Land O'Lakes, Inc. ("Land

21   O'Lakes") under California law, including for wrongful termination, disability discrimination,

22   failure to accommodate, retaliation, and intentional infliction of emotional distress.  Doc. 1-3

23   ("Compl.").  Land O'Lakes moves for summary judgment on all of McKinney's causes of action.

24   Doc. 22.  For the reasons set forth below, Land O'Lakes' motion for summary judgment is

25   granted in part and denied in part.

26   //

27   //

28
                                            1

1      I.      **BACKGROUND**

2          A.  <u>**Factual Background**</u>[1]

3          McKinney began her employment with Land O'Lakes in August 1994 and worked as a

4   Quality Sanitation Coordinator at Land O'Lakes' Tulare, California facility.  DSUF Nos. 2-3.  As

5   a Quality Sanitation Coordinator, McKinney was generally responsible for sanitation needs,

6   including changing filers, performing daily inspections, inspecting various pieces of equipment

7   and sweeping and vacuuming.  DSUF No. 4.  The Quality Sanitation Coordinator role had

8   physical requirements, including bending, lifting, pushing, pulling, and climbing; climbing

9   several flights of stairs on a frequent basis; and extended periods of standing, walking, and

10  kneeling.  DSUF No. 5.  The role required McKinney to be able to push, pull, bend/stoop,

11  crawl/kneel/squat, and climb between 2 and 5 hours per day.  DSUF No. 6.  The role also had

12  non-physical duties, including overseeing audits throughout the Tulare plant, critical control point

13  training of employees, new hire orientation, environmental swabbing throughout the plant, and

14  working with USDA inspectors and getting the plant ready for inspection.  PSUF No. 4.

15          On November 8, 2022, McKinney suffered a work injury that resulted in significant injury

16  to her lower body and shoulder.  DSUF No. 8.  As a result of the injury, a medical provider

17  placed McKinney on restricted duty from November 8, 2022 through November 10, 2022.  DSUF

18  No. 9.  The medical provider indicated McKinney could not kneel or squat and could only climb

19  stairs and ladders in a limited capacity.  DSUF No. 9.  McKinney returned to the medical provider

20  several times and was placed on temporary total disability from November 10, 2022 through

21  November 14, 2022, and on restricted duty from November 14, 2022 through November 29,

22  2022.  DSUF Nos. 10-12.  The medical provider directly sent the work status reports to Land

23  O'Lakes; McKinney did not discuss her injury or work restrictions directly with her supervisors

24  or the Human Resources Department.   DSUF Nos. 13-14.

25  ──────────────

26  [1] The facts that follow are undisputed unless otherwise noted.  *See* Doc. 32 (Defendant's
    Statement of Undisputed Material Facts ("DSUF") and Plaintiff's Separate Statement of
27  Additional Disputed Material Facts ("PSUF")), and the declarations and exhibits attached to the
    motion and opposition.
28

On November 14, 2022, McKinney submitted a complaint with California's Division of Occupational Safety and Health ("CalOSHA") in which McKinney reported that three women were forced to climb into a confined space, an employee was not formally trained in confined spaces, and no fall protection was provided. DSUF No. 16. CalOSHA conducted an inspection of the Land O'Lakes premises on December 22, 2022. DSUF No. 17.

On December 8, 2022, McKinney returned to work after her medical provider prepared a work status worksheet placing her on regular duty without restrictions and McKinney returned to work. DSUF Nos. 19-20. Two days later, McKinney visited her medical provider and was placed on climbing restrictions from December 10, 2022 through January 10, 2023. DSUF No. 21. On February 21, 2023, McKinney's medical provider implemented additional restrictions effective through March 12, 2024, which included no climbing, occasional lifting of 15-20 pounds, and occasionally reaching above shoulder level.[2] DSUF Nos. 22-23.

In or around February 2023, Land O'Lakes placed McKinney on light duty consisting of various administrative duties. DSUF No. 26. The light duty accommodations allowed McKinney to perform some of her essential job functions. PSUF No. 17. McKinney visited her medical provider on April 12, 2023, June 16, 2023, and again July 11, 2023. DSUF Nos. 27, 30, 32. From April 12, 2023 through the time of the filing of this action, the medical provider restricted McKinney from lifting/pushing/pulling over 15 pounds, limited her use of her left arm, and prohibited her from climbing and squatting. DSUF Nos. 28, 31, 32.

On May 18, 2023, CalOSHA issued a citation to Land O'Lakes for the lack of fall protection that McKinney had reported on November 14, 2022, but determined that the other two issues McKinney reported were unfounded. DSUF Nos. 17-18.

On May 24, 2023, Land O'Lakes communicated to McKinney that she was being removed from light duty and being placed on unpaid leave pursuant to Land O'Lakes policy that

---

[2] The parties dispute whether the medical provider placed McKinney on "squat/crouch/kneel" restrictions. *See* DSUF No. 22. McKinney argues that the medical provider's note does not restrict her from being able to "squat/crouch/kneel," and that only "no climbing" was marked. *See* Doc. 22-13. Viewing the medical provider's form in the light most favorable to plaintiff, for the purposes of this motion, the Court construes the medical provider's note as restricting McKinney from climbing, but not from being able to "squat/crouch/kneel."

1    limited light duty accommodations to 90 days.  DSUF Nos. 25, 29.  Antonio Parreira, the

2    Sanitation Supervisor, was informed that, at the beginning 2023, Land O'Lakes policy had

3    changed and that any employee performing light duty functions who had shown no signs of

4    improvement within 90 days would be put on leave.  *See* PSUF No. 24; Parreira Dep. 55:17-

5    57:18, Dec. 5, 2024.  Approximately one week before McKinney was placed on leave, in May

6    2023, Parreira had told McKinney that he had some work assignments that met her restrictions

7    and that she could perform.  Parreira Dep. 63:3-64:1, Dec. 5, 2024.  Additionally, in October

8    2023, McKinney's former supervisor sent her a text message asking her to identify which

9    vacation days she wanted to take in December 2024 (the following year).  DSUF No. 34.

10          In January 2024, McKinney applied for a new position at Land O'Lakes as a lab

11    technician and was awarded the position.  DSUF No. 33.  The parties dispute whether plaintiff

12    was able to accept the role due to her physical restrictions, specifically her lifting restrictions.

13    DSUF No. 33.

14          Land O'Lakes never told McKinney that she was terminated, and McKinney did not

15    resign from her position.  *See* DSUF No. 24.

16    **B.  Procedural Background**

17          On July 27, 2023, McKinney filed a complaint asserting state law claims for:

18    (1) Wrongful Termination in Violation of Public Policy (Government Code § 12940 *et seq.*);

19    (2) Discrimination Based upon Disability/Perceived Disability (Government Code § 12940 *et*

20    *seq.*); (3) Failure to Accommodate (Government Code § 12940(k),(m)); (4) Failure to Engage in

21    the Interactive Process (Government Code § 12926.1(e)); (5) Retaliation (Government Code

22    § 12940 *et seq.*); (6) Failure to Take All Reasonable Steps to Prevent Discrimination and

23    Retaliation (Government Code § 12940 *et seq.*); (7) Wrongful Termination/Retaliation in

24    Violation of Public Policy (Labor Code § 1102.5 *et seq.*, § 6310); and (8) Intentional Infliction of

25    Emotional Distress.

26          Land O'Lakes moves for summary judgment on all of McKinney's causes of action.

27    Doc. 22.  McKinney filed an opposition on May 16, 2025; defendants filed their reply, along with

28    evidentiary objections, on May 30, 2025; and McKinney filed evidentiary objections on June 5,

1    2025. Docs. 31-33.

2    **II.    LEGAL STANDARD**

3       Summary judgment is appropriate if "there is no genuine dispute as to any material fact

4 and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is

5 "genuine" if "a reasonable jury could return a verdict for the nonmoving party." *Momox-Caselis*

6 *v. Donohue*, 987 F.3d 835, 841 (9th Cir. 2021) (internal quotations omitted) (citing *Anderson v.*

7 *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is "material" if it "might affect the

8 outcome of the suit under the governing law." *Anderson*, 477 U.S. at 841. The parties must cite

9 "particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1). The Court then views the

10 record in the light most favorable to the nonmoving party and draws reasonable inferences in that

11 party's favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).

12 The "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to

13 see whether there is a genuine need for trial.'" *Id.* at 587 (citations omitted).

14       "A party seeking summary judgment bears the initial burden of informing the court of the

15 basis for its motion and of identifying those portions of the pleadings and discovery responses

16 that demonstrate the absence of a genuine issue of material fact." *Soremekun v. Thrifty Payless,*

17 *Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323

18 (1986)). If the moving party meets its initial burden, the burden shifts to the nonmoving party to

19 produce evidence supporting its claims or defenses and "establish that there is a genuine issue of

20 material fact." *Matsushita*, 475 U.S. at 585. The nonmoving party "must do more than simply

21 show that there is some metaphysical doubt as to the material facts." *Id.* at 586 (citation omitted).

22 "The mere existence of a scintilla of evidence in support of the [nonmovant's] position" is

23 insufficient to survive summary judgment. *Anderson*, 477 U.S. at 252.

24       In the endeavor to establish the existence of a factual dispute, the opposing party need not

25 establish a material issue of fact conclusively in its favor. *T.W. Elec. Serv., Inc. v. Pac. Elec.*

26 *Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). It is sufficient that "the claimed factual

27 dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

28

1    trial." *Anderson*, 477 U.S. at 252 (quoting *First Nat. Bank of Ariz. v. Cities Serv. Co.*, 391 U.S.

2    253, 289 (1968)).

3        "If the nonmoving party fails to produce enough evidence to create a genuine issue of

4    material fact, the moving party wins the motion for summary judgment.  But if the nonmoving

5    party produces enough evidence to create a genuine issue of material fact, the nonmoving party

6    defeats the motion."  *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099,

7    1103 (9th Cir. 2000) (citing *Celotex*, 477 U.S. at 322).

8    **III.    EVIDENTIARY OBJECTIONS**

9        The parties raise objections to the evidence cited in support of and in opposition to the

10    motion for summary judgment.  *See generally* Docs. 29-1, 32, 33.

11        **A.  Land O'Lakes' Objections Regarding New Claim/Theory of Liability**

12        Land O'Lakes also objects to the introduction of evidence related to a new theory of

13    liability and/or alleged events that are not within the scope of the complaint.  Doc. 31 at 10-11;

14    Doc. 32 ¶ 34-40.  Specifically, in her statement of additional undisputed facts, McKinney alleges

15    that Land O'Lakes changed the requirements of the lab technician position after she was awarded

16    the position.  *See* PSUF No. 34-38.  Defendant's counsel, Robert Sarkisian, filed a declaration

17    indicating that McKinney had not, at any time prior to the filing of the opposition, disclosed those

18    allegations.  Doc. 31-1.  Adding new theories of liability for the first time in opposition to

19    summary judgment, without allowing the other party an opportunity for discovery on the new

20    theory of liability, or without amending the complaint, is improper because defendants do not

21    have notice such that they can properly defend themselves.  *Coleman v. Quaker Oats Co.*, 232

22    F.3d 1271, 1293-94 (9th Cir. 2000) (before plaintiffs could proceed on the new theory of liability

23    on summary judgment plaintiffs were required to either plead their new theory of liability in the

24    complaint or make it known during discovery that they intended to pursue the new theory of

25    liability omitted from the complaint); *see also Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d

26    963, 968-69 (9th Cir. 2006).

27        Plaintiff's allegations regarding the lab technician position are not reflected in the

28    complaint.  In her PSUF, McKinney alleges that she began working as a lab technician in or about

6

1    March 2024 and continued in the position until December 2024, when she was told that the lab

2    technician role required overhead lifting and that her physical restrictions prevented her from

3    lifting more than 20 pounds.  PSUF Nos. 34-35.  McKinney further alleges that, after discussing

4    her role with Land O'Lakes, Land O'Lakes told her that the reason she could no longer work as a

5    lab technician was because the position required kneeling and squatting, which her medical

6    restrictions prohibited.  PSUF No. 38.  McKinney alleges that the lab technician position did not

7    actually require any physical activity that she could not perform due to physical restrictions.

8    PSUF No. 37, 39.  However, the complaint does not include any of these allegations.  The

9    complaint involves events occurring on or before May 2023.  The Court will not consider this

10   new claim and theory of liability as it is outside the scope of the complaint.  *Powell v. Cnty. of*

11   *Orange*, No. 8:21-cv-00801-JVS(DFMx), 2022 WL 3574282, at *3 (C.D. Cal. July 7, 2022)

12   (declining to consider new claims and theories of liability asserted for the first time in opposition

13   to summary judgment).

14       **B.  McKinney's Objections to the Declaration of Maria Rebelo**

15           McKinney objects to the declaration of Maria Rebelo and Exhibit A to her declaration,

16   filed with Land O'Lakes' reply, arguing that Land O'Lakes is improperly introducing evidence

17   for the first time in reply and that the exhibit Land O'Lakes intends to introduce was never

18   produced in discovery despite McKinney's discovery requests.  Doc. 33.  In her declaration,

19   Rebelo states she is a Human Resources Business partner, that she reviewed the positions open

20   between May 2023 through January 2024, and that McKinney would not have been qualified to

21   be reassigned to any of the open positions.  Doc. 31-2.  However, in its motion for summary

22   judgment, Land O'Lakes did not argue that McKinney's claims failed because there were no

23   vacant positions to which McKinney could have been assigned.  *See* Doc. 22-1.  The evidence

24   Land O'Lakes seeks to introduce would require McKinney to produce further evidence (i.e., to

25   rebut whether the list of vacant positions proves that there was no vacant position which

26   McKinney would have been qualified to fulfill).  Although Land O'Lakes argues this new

27   evidence responds to McKinney's evidence that Land O'Lakes personnel did not engage in the

28   interactive process, it does not address that issue.  Rather, the new evidence goes to another issue

1  – whether there was a vacant position for which McKinney was qualified and that she was able to

2  perform, with or without reasonable accommodations.  Land O'Lakes improperly introduces this

3  new evidence for the first time with its reply.  *See Karpenski v. Am. Gen. Life Companies, LLC*,

4  999 F. Supp. 2d 1218, 1226 (W.D. Wash. 2014) (striking evidence that should have been

5  introduced by defendants in their opening brief).  As the Rebelo declaration and Exhibit A thereto

6  are new evidence improperly introduced in defendant's Reply, they are stricken and will not be

7  considered for purposes of defendant's motion for summary judgment.[3]

8       **C.  <u>Parties' Remaining Objections</u>**

9         The parties' remaining objections are "garden variety evidentiary objections" such as

10 relevance.  *See Torres v. Los Angeles Sheriff's Dept.*, Case No. CV 22-07450-MWF (MARx),

11 2024 WL 4720808, at *5 (C.D. Cal. Aug. 14, 2024).  "[A]t the summary judgment stage, we do

12 not focus on the admissibility of the evidence's form.  We instead focus on the admissibility of its

13 contents."  *Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 666 (9th Cir. 2021).  That is, though

14 such objections could prove cognizable at trial, only the admissibility of the relevant facts at trial,

15 not the form of these facts as presented in the motion, matters for purposes of a motion for

16 summary judgment.  *See id.*  To the extent that the Court relies upon evidence to which a party

17 objects in deciding the motion for summary judgment, such objections are overruled.  To the

18 extent the Court does not, the objections are denied as moot.

19 **IV.    ANALYSIS**

20      **A.  <u>Wrongful Termination</u>**

21        McKinney brings her first cause of action for wrongful termination in violation of public

22 policy under the California Fair Employment and Housing Act ("FEHA").  To establish a claim

23 for wrongful termination in violation of public policy, a plaintiff must show that (1) she was

24 employed by the defendant; (2) the defendant discharged the plaintiff; (3) the alleged violation of

25 public policy was a motivating reason for discharge; and (4) the discharge caused harm to the

26

27 [3] As the Court strikes the Rebelo declaration and accompanying exhibit as new evidence
   improperly submitted for the first time in reply, this Order need not address whether striking
28 Exhibit A to Rebelo's declaration would be an appropriate discovery sanction.

1  plaintiff.  *Haney v. Aramark Unif. Servs., Inc.*, 121 Cal. App. 4th 623, 641 (2004).

2        Land O'Lakes argues that it is entitled to summary judgment on the wrongful termination

3  claim because McKinney had not been terminated, nor had she resigned, at the time she filed her

4  complaint.  Doc. 22-1 at 12.  In her deposition, McKinney indicated that she was never told that

5  she was terminated and never received any documentation that she was terminated.  McKinney

6  Dep. 14:10-18, March 12, 2024; *see also* DUSF No. 24.[4]  McKinney does not dispute that she did

7  not resign, but she argues that her claim survives because there is a factual question as to whether

8  she was constructively discharged from her Quality Sanitation Coordinator position.  Doc. 29 at

9  16.

10        To establish a constructive discharge, a plaintiff must show that the defendant "either

11  intentionally created or knowingly permitted working conditions that were so intolerable or

12  aggravated" at the time of resignation that a "reasonable employer would realize that a reasonable

13  person in the employee's position would be compelled to resign."  *Turner v. Anheuser-Busch,*

14  *Inc.*, 7 Cal. 4th 1238, 1256 (1994).  "Courts have denied summary judgment on constructive

15  termination claims where the plaintiff has not formally resigned and is on an extended medical

16  leave of absence."  *Violan v. On Lok Senior Health Servs.*, No. 12–cv–05739-WHO, 2013 WL

17  6907153, at *13 (N.D. Cal. Dec. 31, 2013) (although plaintiff did not technically resign, whether

18  being placed on medical leave constituted constructive termination was a triable issue of fact).

19        Defendant argues that McKinney at no point resigned from her position, pointing to her

20  deposition testimony that she did not believe she had been terminated and to text messages

21  McKinney's supervisor sent in October 2023 requesting McKinney's vacation schedule for

22  December 2024, over a year in advance.  DSUF No. 34.  However, there are other facts which

23  preclude the Court from granting summary judgment on the wrongful termination claim.  On May

24  24, 2023, Land O'Lakes placed McKinney on unpaid leave, which she did not request, one week

25  ---

[4] In her deposition, McKinney also indicated that, to her knowledge, she had not been terminated.
26  McKinney Dep. 14:3-8.  However, the deposition was taken after McKinney was awarded a new
lab technician position in January 2024.  Viewing her testimony in the light most favorable to
27  McKinney, her testimony could refer to her not having been terminated from her new lab
technician position, as she started that position around the time of the deposition, as opposed to
28  referring to her circumstances between May and December 2023.  *See* DSUF No. 24.

1    after CalOSHA issued a citation to Land O'Lakes for a work issue that McKinney had reported.

2    Although McKinney's supervisor texted her on October 24, 2023, regarding her vacation

3    schedule for December 2024, which was over a year in advance, McKinney does not appear to

4    have had communications with Land O'Lakes personnel to discuss her unpaid leave or reasonable

5    accommodations, or any other communications until after she filed the complaint in this case.  A

6    reasonable jury could find that McKinney believed that her employment relationship had been

7    severed by being placed on indefinite unpaid leave, particularly as she filed this action asserting a

8    wrongful termination claim about two months after she was placed on leave.

9         When viewing the facts in the light most favorable to the plaintiff, McKinney has raised a

10   triable issue as to whether she was constructively discharged in May 2023.  *See Surrell v.*

11   *Albertsons LLC*, Case No. 8:23-cv-00937-MRA-KES, 2025 WL 1720176, at *12–13 (C.D. Cal.

12   Mar. 31, 2025) (finding that "whether [an employee's] involuntary leave of absence amounts to

13   constructive discharge by [the employer] is a disputed issue of material fact for a jury to decide"

14   where employer placed employee on leave of absence after finding employee could no longer

15   perform the essential functions); *see also Estrada v. KAG W., LLC*, No. 1:24-cv-00257-KES-

16   CDB, 2025 WL 1939400, at *10 (E.D. Cal. July 15, 2025) ("The circumstances of [plaintiff's]

17   placement on indefinite leave present a jury question as to whether he was constructively

18   discharged.").

19        **B.  <u>Disability Discrimination</u>**

20        Under FEHA, it is unlawful for an employer to discriminate against an employee due to

21   the employee's disability.  Cal. Gov't Code § 12940(a).  To establish a prima facie case of

22   disability discrimination under FEHA, a plaintiff must show that: (1) she suffered from a

23   disability; (2) she could perform the essential duties of the job with or without reasonable

24   accommodations, i.e., [she] was a 'qualified individual'; and (3) she was subjected to an adverse

25   employment action because of her disability.  *Green v. State of California*, 42 Cal. 4th 254, 262-

26   63, 165 P.3d 118, 123 (2007) (plaintiff bears burden of proving she is able to do essential duties

27   of job with or without reasonable accommodation).  However, when a defendant-employer moves

28   for summary judgment, "the burden is reversed ... because the defendant who seeks summary

1  judgment bears the initial burden." *Dep't of Fair Emp't & Hous. v. Lucent Techs., Inc.*, 642 F.3d

2  728, 745 (9th Cir. 2011) (alteration in original) (quoting *Hanson v. Lucky Stores, Inc.*, 74 Cal.

3  App. 4th 215, 224 (1999)).  To prevail on summary judgment, the defendant-employer must show

4  either that (1) the plaintiff-employee could not establish one of the elements of the FEHA claim

5  or (2) there was a legitimate, nondiscriminatory reason for its action.  *Barnett v. Costco*

6  *Wholesale Corp.*, No. 2:20-cv-04896-ODW(JEMx), 2022 WL 1443332, at *5 (C.D. Cal. May 6,

7  2022) (citation omitted).  If the defendant-employer meets its burden, then the plaintiff must

8  demonstrate either that (1) defendant's showing was insufficient or (2) that there was a genuine

9  dispute of fact material to the defendant's showing.  *Id.* (citation omitted).

10        The parties do not dispute that McKinney suffers from a FEHA-qualifying disability.

11  Although McKinney argues that she was competently performing her job functions, she does not

12  identify a material dispute of fact as to whether she could perform the essential duties of her job

13  with or without reasonable accommodations.  *See* Doc. 29 at 17-18.  The essential duties of a

14  sanitation coordinator included various physical and non-physical duties.  Amongst the physical

15  duties, a sanitation coordinator was required to be able to push, pull, bend/stoop,

16  crawl/kneel/squat, and climb frequently between 2 and 5 hours per day.  DSUF. Nos. 5-6.  After

17  her injury, McKinney's medical provider placed various restrictions on her physical activity.  On

18  December 20, 2022, McKinney's medical provider placed her on climbing restrictions.  DSUF

19  No. 21; Doc. 22-12.  On February 21, 2023, the medical provider indicated that McKinney should

20  not climb, could occasionally lift between 15-20 pounds, and could occasionally reach above her

21  head.  Doc. 22-13; *see* DSUF No. 22.  On April 12, 2023, June 16, 2023, and July 11, 2023, the

22  medical provider placed McKinney on light duty with restrictions against lifting, pushing, or

23  pulling over 15 pounds, and against climbing or squatting.  DSUF No. 28-32.  The medical

24  provider also indicated that if no light duty was available, McKinney was to be off work.  DSUF

25  No. 26.  Given that the sanitation coordinator role required that an employee be able to push, pull,

26  bend/stoop, and climb frequently between 2 and 5 hours per day, DSUF Nos. 5-6, and McKinney

27  was restricted from those physical activities, DSUF Nos. 22, 26, McKinney was unable to

28  perform the essential duties of a sanitation coordinator at the time she filed this action.

1    McKinney argues that she was able to perform certain of her essential duties.  Doc. 29 at

2    17.  However, summary judgment is not precluded simply because an employee is able to

3    perform some essential functions.  *See Nealy v. City of Santa Monica*, 234 Cal. App. 4th 359, 374

4    (2015) ("The fact that one essential function may be up for debate does not preclude summary

5    judgment if the employee cannot perform other essential functions even with accommodation.").

6    McKinney's argument that there were other duties or positions that she was able to perform with

7    reasonable accommodations, but that none were offered to her, Doc. 29 at 17, is pertinent to her

8    claims for failure to accommodate and failure to engage in the interactive process, but unavailing

9    as to her disability discrimination claim.  *Atkins v. City of Los Angeles*, 8 Cal. App. 5th 696, 720

10   (2017) (for purposes of discrimination claim, FEHA does not require employers to accommodate

11   plaintiffs by eliminating an essential function of a position).  Here, it is undisputed that physical

12   restrictions prevented McKinney from performing essential duties for between 2 to 5 hours a day.

13   McKinney therefore could not perform essential functions of a sanitation coordinator.  *See*

14   *Aparicio v. Comcast, Inc.*, 274 F. Supp. 3d 1014, 1024 (N.D. Cal. 2017) (plaintiff could not

15   establish a prima facie case for disability discrimination where plaintiff was unable to perform

16   essential duties of job).  Because McKinney could not perform some of the essential duties of her

17   position, summary judgment is appropriate as to the disability discrimination claim.

18        **C.  Failure to Accommodate**

19        Land O'Lakes also moves for summary judgment on McKinney's third cause of action,

20   for failure to accommodate in violation of FEHA.  Under FEHA, employers must make

21   reasonable accommodations unless they can demonstrate that doing so would impose an "undue

22   hardship."  *Spitzer v. The Good Guys, Inc.*, 80 Cal. App. 4th 1376, 1383 (2000) (internal citation

23   and quotation marks omitted).  To establish a claim for failure to accommodate, the plaintiff must

24   establish that: (1) she has a disability under FEHA, (2) she is qualified to perform essential

25   functions of the position, and (3) the employer failed to reasonably accommodate plaintiff's

26   disability.  *Jensen v. Wells Fargo Bank*, 85 Cal. App. 4th 245, 256 (2000).  A reasonable

27   accommodation is "a modification or adjustment to the workplace that enables the employee to

28   perform the essential functions of the job."  *Nadaf-Rahrov v. Neiman Marcus Grp., Inc.*, 166 Cal.

12

1    App. 4th 952, 974 (2008).

2          As indicated above, the parties do not dispute that McKinney has a disability under

3    FEHA.  Land O'Lakes argues that McKinney's physical restrictions prevented her from

4    performing her position altogether and that Land O'Lakes placed her on leave of absence until

5    she could perform the essential duties of her job.  Doc. 22-1 at 14.  However, that argument

6    misses the key inquiry of the failure to accommodate claim: whether the defendant-employer

7    made reasonable accommodations for the employee's disabilities, such as reassigning the

8    plaintiff-employee to a vacant position whose essential functions the employee could perform.

9    *Atkins*, 8 Cal. App. 5th at 721.  As such, defendants have failed to meet their burden of production

10   and summary judgment is denied as to the failure to accommodate claim.

11        **D.  <u>Failure to Engage in the Interactive Process</u>**

12         Land O'Lakes also seeks summary judgment on McKinney's fourth cause of action for

13   the failure to engage in the interactive process.  It is an unlawful employment practice for an

14   employer to fail to engage in a timely, good faith, interactive process with the employee with a

15   known disability.  *Doe v. Dep't of Corr. & Rehab.*, 43 Cal. App. 5th 721, 738 (2019).  It is

16   undisputed that McKinney did not discuss her injury or work restrictions with any of her

17   supervisors or the Human Resources Department.  DSUF No. 14.  Land O'Lakes argues that,

18   because plaintiff did not request an accommodation, she did not engage in the interactive process

19   and therefore her claim fails.  Doc. 22-1 at 14-15.  However, Land O'Lakes was aware that

20   plaintiff required accommodations, as her medical provider sent medical reports directly to Land

21   O'Lakes and Land O'Lakes provided her with leave and, for a time, light duty work.

22          "The interactive process [to determine possible accommodations] is triggered either by a

23   request for accommodation by a disabled employee or by the employer's recognition of the need

24   for such an accommodation."  *Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1112 (9th Cir. 2000),

25   *abrogated on other grounds by US Airways, Inc. v. Barnett*, 535 U.S. 391 (2002); *see also* Cal.

26   Gov't Code § 12940(n).  The good faith interactive process requires that "both sides must

27   communicate directly, exchange essential information[,] and neither side can delay or obstruct the

28   process."  *Nadaf-Rahrov*, 166 Cal. App. 4th at 987.  "[T]he trial court's ultimate obligation is to

                                              13

1    isolate the cause of the breakdown [in the interactive process] and then assign responsibility." *Id.*

2    at 985 (internal quotation marks and citation omitted).  The obligation to engage in good faith is

3    continuing, such that an employer who ultimately causes a breakdown in communication cannot

4    escape liability by proving that it engaged in good faith dialogue earlier in the process.  *Id.*

5           Here, McKinney's medical provider kept Land O'Lakes apprised of McKinney's

6    condition and Land O'Lakes provided some accommodations.  Land O'Lakes placed McKinney

7    on unpaid leave, without her request, and Land O'Lakes does not appear to have provided any

8    information to, or engaged in any dialogue with, McKinney about other vacant positions that she

9    could perform with her physical restrictions after she was placed on unpaid leave.  The Court

10   cannot find as a matter of law that McKinney was responsible for the breakdown of

11   communications and therefore summary judgment is denied as to the failure to engage in the

12   interactive process claim.

13      **E.  <u>Retaliation</u>**

14          To prevail on her claim for retaliation under FEHA, a plaintiff must show:

15   (1) involvement in a protected activity, (2) an adverse employment action, and (3) a causal link

16   between the two.  *Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000).  McKinney's

17   fifth cause of action is premised on her request for accommodations for her disability or perceived

18   disability.  Compl. ¶ 76.

19          Land O'Lakes argues that this cause of action fails because McKinney cannot establish an

20   adverse employment action.  Doc. 22-1 at 13.  While unpaid leave can be a reasonable

21   accommodation in certain circumstances, that "does not mean that it cannot also be an adverse

22   action, particularly where the employee is placed on unpaid leave involuntarily." *Steenmeyer v.*

23   *Boeing Co.*, 92 F. Supp. 3d 1024, 1031 (W.D. Wash. 2015).  Placing an employee on unpaid

24   leave when other accommodations would not create an undue hardship can be an adverse

25   employment action.  *See Mois v. Wynn Las Vegas LLC*, 715 F. App'x 600, 601 (9th Cir. 2017)

26   (reversing grant of summary judgment because unpaid leave was not a reasonable

27   accommodation where defendant failed to show that it engaged in the interactive process and

28   failed to show that assigning light duty work created undue hardship).  "[W]hether the unpaid

14

leave of absence was an adverse employment action turns on whether such an accommodation was reasonable under the circumstances." *Cervantes v. Transdev Servs., Inc.*, No. 3:20-cv-02528-AJB-KSC, 2021 WL 5513512, at *8 (S.D. Cal. Oct. 4, 2021) (denying summary judgment on retaliation claim where there was a question of fact whether the unpaid leave of absence was an adverse employment action).

Defendant has not met its burden of production that placing plaintiff in an indefinite, unpaid leave was reasonable under the circumstances, particularly where there is a triable issue of fact regarding the failure to engage in the interactive process claim. The Court cannot find as a matter of law that placing an employee on unpaid leave, without exploring other accommodations, precludes a claim for retaliation. Whether unpaid leave for an indefinite amount of time constitutes an adverse employment action under the circumstances raises questions of fact for the jury. Accordingly, summary judgment is denied as to retaliation claim.

**F.  Failure to Prevent Discrimination and Retaliation**

McKinney's sixth cause of action, for failure to prevent discrimination and retaliation, is brought under FEHA. FEHA prohibits employers from "fail[ing] to take all reasonable steps necessary to prevent discrimination and harassment from occurring." Cal. Gov't Code § 12940(k). To prevail under this claim, a plaintiff must establish that: (1) plaintiff was subjected to discrimination, harassment, or retaliation; (2) defendant failed to take all reasonable steps to prevent such discrimination, harassment, or retaliation; and (3) this failure harmed plaintiff. *Rizvanovic v. Amazon.com Servs., LLC*, No. 1:21-CV-01804-JLT-CDB, 2024 WL 1886495, at *9 (E.D. Cal. Apr. 30, 2024). Land O'Lakes moves for summary judgment on the basis that the underlying discrimination and retaliation claims fail and that, in any event, it had policies in place to prevent discrimination and retaliation. As set forth above, although summary judgment is proper as to the discrimination claim, the retaliation claim survives summary judgment. As to Land O'Lakes's argument that it had anti-discrimination and anti-retaliation policies, including policies that allowed an injured employee to move into an open position, *see* Doc. 22-1 at 16, Land O'Lakes does not cite to any evidence of those policies or to any training its employees

1  received on such policies.[5]  As such, the Court cannot find as a matter of law that the claim for

2  failure to prevent retaliation fails as a matter of law.

3         Accordingly, summary judgment is granted in part and denied in part as to the sixth cause

4  of action.

5     **G.  Wrongful Termination/Retaliation in Violation of Public Policy**

6         Land O'Lakes also seeks summary judgment on McKinney's seventh cause of action, for

7  wrongful termination and retaliation in violation of public policy under Labor Code section

8  1102.5 *et seq.*, and section 6310.  To prevail on a claim under section 1102.5, a plaintiff must

9  show that the employee's protected whistleblowing was a contributing factor to an adverse

10  employment action.  *Lawson v. PPG Architectural Finishes, Inc.*, 12 Cal. 5th 703, 712 (2022).

11  The burden then shifts to the employer to demonstrate by clear and convincing evidence that the

12  alleged adverse employment action would have occurred for legitimate, independent reasons even

13  if the employee had not engaged in protected whistleblowing activities.  *Id.*

14         The parties do not dispute that McKinney engaged in protected whistleblowing when she

15  submitted a complaint to CalOSHA regarding the alleged unsafe conditions.  As explained above,

16  whether placing plaintiff on unpaid leave was an adverse employment action turns on disputed

17  factual questions.  McKinney was placed on unpaid leave shortly after CalOSHA cited Land

18  O'Lakes for a violation she reported, and there is a triable issue of fact as to whether Land

19  O'Lakes is liable for the failure to engage in the interactive process after placing her on unpaid

20  leave.

21         Land O'Lakes has the burden to prove, by clear and convincing evidence, that it placed

22  McKinney on unpaid leave for reasons independent of the protected whistleblowing activities.

23  Land O'Lakes argues that it placed McKinney on unpaid leave not due to her submitting an

24  OSHA report, but rather due to the physical restrictions requested by McKinney's medical

25  provider.  Doc. 22-1 at 17.  However, "[u]nder section 1102.6, a plaintiff does not need to show

26  that the employer's nonretaliatory reason was pretextual. Even if the employer had a genuine,

27

28  _____
[5] In its motion, Land O'Lakes references "Relevant Factual Background, II.A" of its motion, but
that section does not provide any references to policies or training.  *See* Doc. 22-1 at 7, 16.

1   nonretaliatory reason for its adverse action, the plaintiff still carries the burden assigned by statute

2   if it is shown that the employer also had at least one retaliatory reason that was a contributing

3   factor in the action." *Lawson v. PPG Architectural Finishes, Inc.*, 12 Cal. 5th 703, 715–16, 503

4   P.3d 659, 666 (2022).  Given the timing of Land O'Lakes' placement of McKinney on unpaid

5   leave shortly after Land O'Lakes was cited by CalOSHA for a violation McKinney that had

6   reported, it is a jury question whether McKinney's CalOSHA complaint, as opposed to the

7   medical provider's notes, were the reason for placing McKinney on unpaid leave while not

8   having further communication with her.

9         Accordingly, summary judgment is denied as to the claim for retaliation in violation of

10  public policy under section 1102.5.

11     **H.  <u>Intentional Infliction of Emotional Distress</u>**

12        To prevail on an intentional infliction of emotional distress claim, a plaintiff must show:

13  (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless

14  disregard of the probability of causing, emotional distress; (2) she suffered severe or extreme

15  emotional distress; and (3) her injuries were actually and proximately caused by the defendant's

16  outrageous conduct.  *Light v. Dep't of Parks & Recreation*, 14 Cal. App. 5th 75, 101 (2017).

17  There is a high bar to demonstrate severe emotional distress.  *Hughes v. Pair*, 46 Cal. 4th 1035,

18  1051 (2009).  Severe emotional distress requires "emotional distress of such substantial quality or

19  enduring quality that no reasonable [person] in civilized society should be expected to endure it."

20  *Id*. (internal quotation marks and citation omitted).

21        Although McKinney argues that she endured discrimination and retaliation as a result of

22  Land O'Lakes actions, she provides no argument or evidence that she suffered emotional distress,

23  much less that she suffered severe or extreme emotional distress as a result of Land O'Lakes'

24  actions.  Moreover, the conduct alleged in the complaint – that McKinney was placed on medical

25  leave while having physical restrictions – without more, does not amount to the type of extreme

26  and outrageous conduct that can support a claim for intentional infliction of emotional distress.

27  *See Light*, 14 Cal. App. 5th at 102 (granting summary judgment for defendant who may have

28  contributed to a violation of FEHA's anti-retaliatory provision, but whose conduct was not

1    extreme or outrageous); *Katz v. Katz*, No. C22-5040JLR, 2022 WL 17551457, at *2 (W.D. Wash.

2    Dec. 9, 2022) (granting summary judgment where defendants only had limited contacts with

3    plaintiff during the relevant time).  While McKinney argues that defendant discriminated and

4    retaliated against her, she does not identify any specific behaviors that were extreme or

5    outrageous and offers no facts to support her characterization of Land O'Lakes' actions as

6    extreme or outrageous.  "A simple pleading of personnel management activity is insufficient to

7    support a claim of intentional infliction of emotional distress, even if improper motivation is

8    alleged. If personnel management decisions are improperly motivated, the remedy is a suit against

9    the employer for discrimination." *Dogbo v. Verizon Wireless, LLC*, No. C 15-04418 JSW, 2017

10   WL 1133375, at *4 (N.D. Cal. Mar. 27, 2017) (internal quotation marks and citation omitted);

11   *Altemus v. Amazon.com Servs. LLC*, No. 22-CV-1275-DMS-BGS, 2024 WL 1357596, at *15

12   (S.D. Cal. Mar. 29, 2024) ("Although an underlying FEHA violation can support an IIED claim,

13   the plaintiff must still make a showing that all elements of the IIED claim are satisfied.").

14          Accordingly, summary judgment is granted as to McKinney's intentional infliction of

15   emotional distress claim.

16   ///

17   ///

18   ///

19   ///

20   ///

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

**V.    CONCLUSION**

For the foregoing reasons, Land O'Lakes' motion for summary judgment (Doc. 22) is:

1.  Denied as to the first cause of action for wrongful termination, the third cause of action for failure to accommodate, the fourth cause of action for failure to engage in the interactive process, the fifth cause of action for retaliation, and the seventh cause of action for wrongful termination and retaliation in violation of public policy;

2.  Granted as to the second cause of action for disability discrimination and the eighth cause of action for intentional infliction of emotional distress; and

3.  Granted in part and denied in part as to the sixth cause of action for failure to prevent discrimination and retaliation.  The sixth cause of action shall proceed only on the claim of failure to prevent retaliation.

IT IS SO ORDERED.

Dated:    September 2, 2025

_____
UNITED STATES DISTRICT JUDGE