UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIMBERLY MCKINNEY,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>LAND O'LAKES INC.,<br><br>　　　　　Defendant. | No.  1:23-cv-01304-KES-HBK<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTIONS IN LIMINE TO PRECLUDE TESTIMONY BY PLAINTIFF'S RETAINED EXPERTS (1) DR. JOSEPH PENBERA, AND (2) DR. JULIE ARMSTRONG<br><br>(Docs. 75, 77) |

This action is set for trial on plaintiff's California Fair Employment and Housing Act ("FEHA") claims for (1) wrongful termination, (2) failure to accommodate, (3) failure to engage in the interactive process, (4) retaliation, and (5) failure to prevent retaliation; and plaintiff's claim for (6) wrongful termination and retaliation in violation of public policy (Labor Code § 1102.5).

The Court held oral argument on the parties' motions in limine on June 17, 2026, and noted on the record its rulings as to plaintiff's motions in limine 1–4 and defendant's motions in limine 1–4 and 7–8.  As to defendant's motions in limine 5 and 6, to preclude testimony of plaintiff's retained experts Dr. Joseph Penbera and Dr. Julie Armstrong, *see* Docs. 75 & 77, defendant's motions are granted in part and denied in part for the reasons set forth below and as addressed at the hearing.

1

## I.   LEGAL STANDARD

A witness who has been qualified as an expert by knowledge, skill, experience, training, or education may give an opinion on scientific, technical, or otherwise specialized topics if (1) the expert's scientific, technical, or other special knowledge will help the trier of fact understand the evidence or determine a fact in issue, (2) the testimony is based upon sufficient facts or data, (3) the testimony is the product of reliable principles and methods, and (4) the witness has applied the principles and methods reliably to the facts of the case.  Fed. R. Evid. 702; *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1043–44 (9th Cir. 2014).  The Court serves as a gatekeeper by "ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand."  *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 597 (1993).

"Scientific evidence is reliable if it is based on an assertion that is grounded in methods of science—the focus is on principles and methodology, not conclusions."  *Metabolife Int'l, Inc. v. Wornick,* 264 F.3d 832, 841 (9th Cir. 2001).  The test of reliability is flexible, and "[t]he Court must assess the expert's reasoning or methodology, using [] appropriate criteria such as testability, publication in peer-reviewed literature, known or potential error rate, and general acceptance."  *City of Pomona*, 750 F.3d at 1044.  Other factors that might be considered include whether an expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion, *see General Elec. Co. v. Joiner,* 522 U.S. 136, 146 (1997), or whether an expert has adequately accounted for obvious alternative explanations, *see Claar v. Burlington Northern R. Co.,* 29 F.3d 499, 502 (9th Cir. 1994).

The judge should "screen the jury from unreliable nonsense opinions, but not exclude opinions merely because they are impeachable."  *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969 (9th Cir. 2013).  Simply put, "[t]he district court is not tasked with deciding whether the expert is right or wrong, just whether his testimony has substance such that it would be helpful to a jury."  *Id.* at 969–70.  "Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion."  *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010).  The Court has discretion to decide how to test an expert's reliability based on the type of expert testimony offered.  *City of Pomona*, 750

2

F.3d at 1045.  The test is the soundness of the methodology, with the fact finder weighing testimony that meets the threshold established by Rule 702.  *Id.*  The party offering the expert bears the burden of establishing that Rule 702 is satisfied.  *Daubert*, 509 U.S. at 593 n.10.

**II.     MOTION IN LIMINE TO PRECLUDE TESTIMONY BY DR. PENBERA**

Defendant moves to preclude plaintiff's expert, Dr. Joseph Penbera, from: (1) testifying to lost wages that allegedly accrued after January 1, 2024 through trial, (2) offering opinions based on unreliable methodology and testifying as to legal conclusions; and (3) testifying as to punitive damages.  Doc. 75.  Plaintiff opposes the motion, arguing that Dr. Penbera's calculations of plaintiff's lost income and benefits are appropriately based on his consideration of plaintiff's past earnings, and that any testimony in the punitive damages phase would be based on defendant's publicly available financial information.[1]  Doc. 101.  The parties do not dispute Dr. Penbera's qualifications to offer the opinions as to lost wages and benefits set out in his report.  *See* Doc. 75, 101.

**A.     Opinions on lost income and benefits since May 28, 2023**

Defendant argues that Dr. Penbera's testimony should be precluded to the extent it rests on factual allegations in 2024 or later that are outside the scope of the operative complaint. Doc. 75 at 6–7.  Defendant also argues that Dr. Penbera's calculations of lost income and benefits damages are speculative and flawed.  *See id.* 8–10.

**1.     Admissibility of Dr. Penbera's expert testimony**

Dr. Penbera calculates plaintiff's lost income and benefits based on plaintiff's past wages. *See* Doc. 75-1 at 21–24.  Defendant raises several objections regarding the method Dr. Penbera utilized in calculating lost wages, but such objections go to the weight of Dr. Penbera's opinion, not its admissibility.  Dr. Penbera's report indicates that, among other information, he reviewed plaintiff's earnings statements from "12/23/2018 to 1/13/2024" and from "6/15/2023 to 5/15/2025."  Those include plaintiff's earnings statements showing her 2023 income and

---

[1] Plaintiff acknowledges that Dr. Penbera may not offer legal conclusions.  *See* Doc. 101; *United States v. Diaz*, 876 F.3d 1194, 1197 (9th Cir. 2017) ("an expert witness cannot give an opinion as to her legal conclusion, i.e., an opinion on an ultimate issue of law.").

3

deductions through May 2023, when she was put on leave or terminated, and showing her 2024 income and deductions through mid-December 2024.  *See* Doc. 75–1, Ex. D.

To the extent defendant argues that Dr. Penbera relied on incomplete pay data from the relevant years or failed to adequately consider plaintiff's earnings in earlier years, "it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony." *Micro Chemical, Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1392 (Fed Cir. 2003).  Even if Dr. Penbera had failed to consider all potentially relevant pay data, which is not evident, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 595.  Under *Daubert*, "[t]he district court is not tasked with deciding whether the expert is right or wrong, just whether his testimony has substance such that it would be helpful to a jury." *Alaska Rent-A-Car, Inc.*, 738 F.3d at 969–70.  "Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Primiano*, 598 F.3d at 564.   Dr. Penbera is not precluded as a general matter from offering expert opinions on plaintiff's lost income and benefits.

**2.      Lost income and benefits damages based on events occurring between plaintiff's 2022 injury and her starting a new position in March 2024**

A plaintiff asserting claims under FEHA may seek back pay and front pay as compensatory damages. *Lopez v. Wal-Mart Assocs., Inc.*, No. 2:25-CV-07050-MCS-MAA, 2025 WL 2731005, at *2 (C.D. Cal. Sept. 24, 2025).  "Front pay usually reflects a temporary situation that will be remedied by other relief ordered in the judgment." *Horsford v. Bd. of Trs. of California State Univ.*, 132 Cal. App. 4th 359, 388 (2005).  Courts may award "front pay based upon a wage differential that will persist over the employee's working life." *Id.*  Nonetheless, "[f]ront pay is intended to be a temporary measure, and courts are wary of front pay awards for the remainder of a plaintiff's career when that individual can mitigate his or her losses." *McCray v. Westrock Servs., LLC*, No. 21-9853-DMG (RAOX), 2024 WL 4579108, at *7 (C.D. Cal. Sept. 10, 2024) (collecting cases and finding that a 16-year front pay award was unduly speculative).

Defendant asserts that Dr. Penbera's opinions rest "entirely" on 2024 and 2025 factual

4

allegations that are not part of plaintiff's claims in this action.  Doc. 75 at 6.  But that is incorrect.  For example, Dr. Penbera's report reflects that, among other data, he considered plaintiff's past wages from January through May 2023 in calculating plaintiff's lost income for the period from her alleged constructive termination in May 2023 through her starting a new position in March 2024.  While Dr. Penbera's report includes lost income and benefits calculations for periods after December 2024, when plaintiff was allegedly terminated from her new position, Dr. Penbera also clearly addresses plaintiff's lost income and benefits for the period from May 2023 to March 2024.  Dr. Penbera may testify as to plaintiff's lost income and benefits through March 2024.

Dr. Penbera's report also includes calculations of plaintiff's future lost income and benefits after December 2024.  But the parties agree that plaintiff obtained a new job position with defendant in March 2024.  Doc. 44 at 4.  And while plaintiff was allegedly terminated from that new position in December 2024, that termination is not part of plaintiff's claims in this action.  *See* Doc. 47.

To the extent plaintiff's future lost income and benefits are based on plaintiff's alleged wrongful termination in December 2024, which is not a claim at issue in this case, testimony as to such damages would not be relevant to plaintiff's claims at trial.  Dr. Penbera will be precluded from testifying as to lost income and benefits damages that are due to plaintiff's December 2024 termination.  However, to the extent certain such future losses are attributable to actions that are the subject of plaintiff's claims—for example, plaintiff's loss of future benefits due to her lost income in the period from May 2023 to March 2024—then Dr. Penbera's testimony as to such specific future losses would be admissible to that extent.

### B.    <u>Punitive Damages</u>

Defendant argues that Dr. Penbera should be precluded from testifying to punitive damages because he was not designated to testify to punitive damages, he did not provide an expert report on punitive damages, and plaintiff did not seek financial records to support a punitive damages analysis.  Doc. 75 at 10–11.

Federal Rule of Civil Procedure 26(a)(2) requires parties to disclose expert witnesses and provide a written report that contains "a complete statement of all opinions the witness will

express and the basis and reasons for them." The failure to make the disclosures required by Rule 26(a) precludes the party from using the information or witness at trial unless the failure was substantially justified or is harmless. Fed. R. Civ. P. 37(c)(1); *see also Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001) ("Rule 37(c)(1) gives teeth to [disclosure] requirements by forbidding the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed.").

Plaintiff appears to concede that Dr. Penbera cannot provide expert testimony as to punitive damages. *See* Doc. 101 at 7 ("Dr. Penbera's expected testimony on defendant's own financial records is admissible as non-expert testimony…"). Plaintiff did not disclose Dr. Penbera as an expert on any punitive damages issue, and Dr. Penbera's expert report does not include an opinion regarding punitive damages. Additionally, Dr. Penbera confirmed in his deposition that his testimony was limited to determining damages with respect to lost income and benefits. *See* Doc. 75 at 10–11; Doc. 101. Plaintiff does not argue that the failure to disclose Dr. Penbera's opinions on punitive damages was substantially justified or harmless. *See Merch. v. Corizon Health, Inc.*, 993 F.3d 733, 741 (9th Cir. 2021) (the party facing sanctions has the burden to prove harmlessness); *see also Yeti by Molly, Ltd.*, 259 F.3d at 1106 (noting that Advisory Committee Notes describe Rule 37(c)(1) as a "self-executing," "automatic" sanction to "provide[ ] a strong inducement for disclosure of material...." and noting that courts have "upheld the use of the sanction even when a litigant's entire cause of action or defense has been precluded.").

Dr. Penbera is therefore precluded from testifying as an expert as to punitive damages and may not offer any opinion as to defendant's financial documents or financial condition. Plaintiff does not dispute the exclusion of expert opinion or expert testimony on this issue. Rather, plaintiff appears to propose that Dr. Penbera read to the jury excerpts from admitted exhibits—to "testify as a witness simply to assist the jury in reading" defendant's publicly available financial documents. Doc. 101 at 8. Plaintiff represented at the hearing that she would establish a basis to admit defendant's financial documents at any punitive damages phase of the trial, independent of any testimony by Dr. Penbera. Assuming plaintiff establishes a basis to admit such records at trial, the Court reserves for trial the issue of how plaintiff may present such records to the jury.

6

**III.    MOTION IN LIMINE TO PRECLUDE TESTIMONY BY DR. ARMSTRONG**

Defendant moves (1) to preclude plaintiff's expert Dr. Julie Armstrong from testifying as to plaintiff's emotional distress and non-economic damages because, defendant claims, Dr. Armstrong's testimony is based on events in 2024 that are outside the scope of the litigation, (2) to preclude Dr. Armstrong's testimony because it is not based on any medical or employment records, and (3) to preclude Dr. Armstrong from offering opinions regarding the causation of plaintiff's emotional distress damages.  Doc. 77.  Plaintiff opposes the motion, arguing that Dr. Armstrong's testimony that plaintiff suffers emotional distress is admissible because the evidence shows that plaintiff's emotional distress arose, at least in substantial part, due to defendant's actions in the relevant period, and that defendant's objections to Dr. Armstrong's testimony go to the weight, not admissibility, of her opinions.  Doc. 102.  The parties do not dispute Dr. Armstrong's qualifications.  *See* Doc. 77, 102.

Under *Daubert*, the district court is required to act as a gatekeeper of expert witness testimony.  *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1321 n.18 (9th Cir. 1995).  "To fulfil [their] substantive gatekeeping obligations, courts must determine if the proffered testimony is reliable, and if it fulfills the 'fit' requirement, meaning that the expert's testimony 'logically advances a material aspect of the proposing party's case.'" *Feindt v. United States*, No. CV 22-00397 LEK-KJM, 2024 WL 1514021, at *4 (D. Haw. Apr. 8, 2024) (quoting *Daubert*, 43 F.3d at 1315).  "[I]f the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect."  Fed. R. Evid. 703.

First, defendant argues that Dr. Armstrong's opinions should be precluded because they are based on plaintiff's factual allegations concerning events outside the scope of plaintiff's claims, including plaintiff's assertion that in December 2024 defendant wrongfully terminated her from her new position, and that in September 2024 defendant posted graphic photos of plaintiff's injury.  Doc. 78 at 2.  Plaintiff does not dispute that evidence of the September and December 2024 events are outside the scope of her claims at trial.   Rather, plaintiff argues that Dr. Armstrong's opinion that plaintiff suffers emotional distress is admissible because the evidence

shows that plaintiff's emotional distress arose, in substantial part, based on the events that are the subject of this litigation. *See* Doc. 102.

While defendant argues that Dr. Armstrong relies insufficiently on the relevant period in reaching her expert opinions, that is incorrect. Dr. Armstrong's report refers at length to plaintiff's account of her circumstances from her injury in November 2022 to her re-hiring by defendant in March 2024. *See* Doc. 77-1 at 45–46. To the extent defendant argues that Dr. Armstrong's report does not adequately differentiate the sources of plaintiff's emotional distress between events occurring before March 2024 and those occurring thereafter, that argument goes to the weight of Dr. Armstrong's testimony, not its admissibility, and may be subject to cross examination. *See Feindt*, 2024 WL 1514021, at *7 (psychiatrist's alleged disregard of other possible sources of trauma and failure to review all medical records went to the weight rather than admissibility of expert testimony).

Defendant objects that Dr. Armstrong does not apportion the cause of emotional distress between the pre-March 2024 incidents and events occurring after March 2024, but, as plaintiff points out, the appropriate inquiry is whether the pre-March 2024 events were a substantial cause of plaintiff's damages, not whether they were the sole cause. The Ninth Circuit does "not require experts to eliminate all other possible causes of a condition for the expert's testimony to be reliable." *Wendell v. GlaxoSmithKline LLC*, 858 F.3d 1227, 1237 (9th Cir. 2017) (quoting *Messick v. Novartis Pharms. Corp.*, 747 F.3d 1193, 1199 (9th Cir. 2014)). "It is enough that the proposed cause 'be a substantial causative factor,'" *id.*, and that is sufficiently shown on the present record to provide a basis for Dr. Armstrong's testimony. Defendant may contest Dr. Armstrong's testimony through "[v]igorous cross-examination" or the "presentation of contrary evidence," but they fail to show a basis to exclude it entirely. *See Daubert*, 509 U.S. at 595; *see also Primiano*, 598 F.3d at 564 ("Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion.").[2]

_____

[2] Plaintiff argues that defendant failed to plead as an affirmative defense that there was a "superseding cause" of plaintiff's psychological harm, and that plaintiff therefore cannot raise such a defense to Dr. Armstrong's testimony. A superseding cause is an affirmative defense that is waived if not alleged in the answer. *Green v. Healthcare Servs., Inc.*, 68 Cal. App. 5th 407,

8

Second, defendant also objects that Dr. Armstrong's opinion relies solely on her experience and her interview and testing of plaintiff and not on medical or employment records. Doc. 77 at 6–9.  This argument likewise goes to the weight of Dr. Armstrong's testimony, not to its admissibility.  *See Feindt*, 2024 WL 1514021, at *7.  Dr. Armstrong explains that her opinion is based largely on her clinical interview of plaintiff, during which Dr. Armstrong administrated the Structured Inventory of Malingered Symptoms (SIMS) and Millon Clinical Multiaxial Inventory-IV (MCMI-IV) tests.  Doc. 77-1 at 36–37.  Defendant does not establish, or even argue, that Dr. Armstrong's clinical interview of plaintiff was an unacceptable methodological approach.  *See* Doc. 77; *Doe (C.L.F.) v. G6 Hosp., LLC*, No. 1:23-CV-00303-MJT-CLS, 2025 WL 2825773, at *5 (E.D. Tex. Aug. 20, 2025) ("MCMI-IV remains 'generally accepted in the relevant scientific community.'"); *Vicente v. Barnett,* 415 F. App'x 767, 770 (9th Cir. 2011) (clinical interviews where a doctor observes a person's affect and gathers data on the person's life history, level of function prior to the relevant event, and function after the relevant was not a clearly invalid reasoning and methodology).

Third, defendant seeks to preclude Dr. Armstrong from offering opinions regarding the causation of plaintiff's emotional distress damages.  Dr. Armstrong was not plaintiff's treating provider and did not review plaintiff's contemporaneous medical records, and she did not observe plaintiff's emotional state or symptoms during the period from 2022 to March 2024. Additionally, as plaintiff acknowledged at the hearing, Dr. Armstrong may not testify specifically to the plaintiff's credibility regarding plaintiff's claimed adverse workplace experiences.  *See United States v. Rivera*, 43 F.3d 1291, 1295 (9th Cir. 1995) (quoting *United States v. Candoli*, 870 F.2d 496, 506 (9th Cir.1989) ("[an] expert witness is not permitted to testify specifically to a witness' credibility or to testify in such a manner as to improperly buttress a witness' credibility.").

But Dr. Armstrong may testify to her observations of plaintiff's emotional distress

---

415 (2021).  But defendant is not seeking to assert this issue as an affirmative defense.  Rather, defendant is identifying an issue that is clearly raised by Dr. Armstrong's report, which notes that plaintiff attributed her emotional distress to both pre- and post-March 2024 events.  Given this, defendant is not precluded from questioning plaintiff and/or Dr. Armstrong on this issue at trial.

symptoms and disorder when she evaluated plaintiff in July 2025, and the extent to which plaintiff's account of her alleged adverse workplace experiences from her 2022 injury to her rehiring in March 2024, if true, could substantially contribute to such ongoing emotional distress symptoms. *See Villareal v. City of San Jose*, No. 22-CV-09152-VKD, 2026 WL 976071, at *3 (N.D. Cal. Apr. 10, 2026) (expert's opinions regarding whether plaintiff's version of events, if true, could cause someone to experience post-traumatic stress disorder was admissible testimony); *Cleveland v. Behemoth*, No. 3:19-CV-00672-RBM-BGS, 2022 WL 5314770, at *3 (S.D. Cal. Oct. 6, 2022) (expert testimony admissible where such testimony could "be helpful to the trier of fact in determining whether and to what extent Plaintiff suffered emotional distress and whether such distress was caused by Defendant.")*; see also Reed v. Lieurance*, 863 F.3d 1196, 1209 (9th Cir. 2017) ("While [a]n expert witness is not permitted to testify specifically to a witness'[s] credibility, we know of no rule barring expert testimony because it might indirectly impeach the credibility of an opposing party's testimony." (internal quotation marks and citations omitted)); *Doe v. Bridges to Recovery*, LLC, No. 2:20-CV-348-SVW, 2021 WL 4690830, at *4–5 (C.D. Cal. May 19, 2021) (precluding expert from opining as to credibility generally or veracity of allegations but not excluding expert's opinions relating to his diagnosis of plaintiff).

## IV.    CONCLUSION

Defendant's motions in limine to preclude testimony of Dr. Joseph Penbera, Doc. 75, and Dr. Julie Armstrong, Doc. 77, are granted in part and denied in part, as set forth above.

IT IS SO ORDERED.

Dated:    June 21, 2026

_____
UNITED STATES DISTRICT JUDGE

10